No. 24-2235

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| ANDREW THAYER, KRISTI KEORKUNIAN, and LINDA LOEW, <br><br>  Plaintiffs-Appellants, <br><br> v. <br><br> CITY OF CHICAGO, TOM CARNEY in his official capacity as Commissioner of the Chicago Department of Transportation, and LARRY SNELLING, in his official capacity as Superintendent of the Chicago Police Department, <br><br>  Defendants-Appellees. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> Case No. 24-cv-3563 <br><br> The Honorable Thomas M. Durkin, District Judge |

**PLAINTIFFS-APPELLANTS'
EMERGENCY MOTION FOR EXPEDITED APPEAL**

1. This appeal challenges the District Court order dated July 19, 2024 (Dkt. 28), denying Plaintiffs-Appellants' motion to enjoin enforcement of an unconstitutionally vague Chicago ordinance that will be in effect only from August 17 through 25, 2024 (the "Convention Period").

2. Pursuant to Fed. R. App. P. 2(a) and Circuit Rule 2, Plaintiffs-Appellants Andrew Thayer, Kristi Keorkunian, and Linda Loew (collectively, "Protesters") respectfully request that the Court expedite this appeal to ensure that they (and thousands of other protesters) may exercise their First Amendment right to freedom of speech and peaceable assembly during the 2024 Democratic National

Convention (DNC) without risking arrest, fines, or imprisonment under an unconstitutionally vague ordinance (the "Footprint Ordinance" or the "Ordinance," No. 2024-0008373). The DNC will take place in Chicago from August 19 through 21, 2024. Given these exigent circumstances, Protesters request that the Court set a briefing schedule that will allow a ruling on this matter no later than August 9, 2024. Without such a schedule and an accelerated appellate decision, the issue on appeal will be moot. Such an expedited schedule also will ensure that the District Court has ample time to craft an appropriate remedy, if needed, prior to the Convention Period.

**Procedural History.**

3.      Protesters, who wish to demonstrate against the Democratic Party's failure to protect the bodily autonomy of LGBTQ+ people and pregnant people, Compl., Dkt. 1 ¶12, filed their Verified Complaint (Compl., Dkt. 1), Motion for Preliminary Injunction ("PI Motion," Dkt. 6), and Memorandum in Support (Dkt. 7-1) on May 2, 2024. Plaintiffs did not seek monetary damages but challenged the constitutionality of the City's denial of Protesters' application for a parade permit on August 18, 2024, under the First Amendment (Count I); portions of Chicago's Parade Permit Ordinance, Code Sec. 10-8-330, under the First Amendment (Count II); and the Footprint Ordinance, under the Due Process Clause of the Fourteenth Amendment (Count III). Dkt. 1 ¶¶ 73-91.

4.      On June 26, 2024, the parties agreed that further briefing on the Preliminary Injunction Motion was required only as to Count III. Dkt. 27, Tr. 7-8,

11. The District Court directed that the remaining briefing on the motion discuss only the first factor of the preliminary injunction inquiry; that is, whether the plaintiffs were likely to succeed on the merits of their claim that the Footprint Ordinance was unconstitutional. *Id.*, Tr. 18:13-24. The District Court reasoned that if the first factor favored Protesters, it could move on to the remaining factors. *Id.*, Tr. 18:24-19:1. The City filed its response to the PI Motion on July 8, 2024 (Dkt. 24), and Protesters filed their reply on July 12, 2024 (Dkt. 26). On July19, 2024, the District Court denied the PI Motion, holding that Protesters were not likely to succeed in showing that the Ordinance was unconstitutionally vague. Dkt. 28. Protesters filed their notice of appeal on July 19, 2024. Dkt. 29.

**<u>The Footprint Ordinance is Unconstitutionally Vague.</u>**

5. The City enacted the Footprint Ordinance on April 17, 2024. Compl. Ex. P. Section II(1) of the Ordinance authorizes the "Chicago Superintendent of Police, in consultation with the United States Secret Service [USSS] and the Chicago Office of Emergency Management and Communications [OEMC]" to designate a "security footprint," the boundaries of which "shall be publicized on the Chicago Police Department's website to the extent feasible." *Id.* To date, the City has not announced the boundaries of the security footprint, but it certainly will include areas immediately proximate to the United Center, one of the DNC's primary venues.

6. Section II(2) of the Ordinance prohibits certain activities within the security footprint during the Convention Period. Among other things, it is unlawful

3

"to possess, carry, control, or have immediate access to any item that poses potential safety hazards, as determined by the Chicago Superintendent of Police, in consultation with the [USSS] and the [OEMC], including, but not limited to, any item listed in Exhibit A to this Ordinance. . . ." *Id.*, Section II(2)(iii).

7. Some of the listed prohibited items are broad categories of items, such as "pointed object(s)," "[s]ealed packages," and "[m]etal [c]ontainers"—in addition to other "[p]otential [s]afety [h]azards" for the Superintendent to determine at some later date. *Id.*, Exhibit A. The Ordinance contains no standards to guide the Superintendent's discretion in naming "potential safety hazards" and no requirement to make those determinations public. Yet a person who possesses prohibited items within the security footprint during the Convention Period or otherwise violates Section II of the Ordinance may be sentenced to a fine of $100 to $500, incarceration of ten days to six months, or both, for each offense. *Id.*, Section II(3).

8. The Footprint Ordinance is unconstitutionally vague because it fails to give ordinary people fair notice of the prohibited conduct so they may conform their conduct to the law. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Based on the Ordinance, Protesters simply do not know what they may bring into the security footprint when they protest the DNC. What is more, they *still* will not know on the day they go to protest, because the Ordinance provides no way for them to find out what new "potential safety hazards" the Superintendent has added to the list.

9.     The Ordinance is also unconstitutionally vague because it does not provide sufficient guidance to law enforcement to prevent arbitrary or discriminatory enforcement. *Id.* The Ordinance does not define or limit "potential safety hazards" by, for example, requiring some level of likelihood or severity of risk, giving the Superintendent virtually unfettered discretion to add new items to the list. And some of the categories *already* on the list are so vague that law enforcement may have starkly different understandings about how, when, and against whom they should apply.

**Without this Court's Prompt Intervention, the Ordinance Will Injure Protesters.**

10.    Protesters Andrew Thayer, Kristi Keorkunian, and Linda Loew are frequent organizers of and participants in protest marches and demonstrations. Compl. ¶¶ 13-15. The Protesters intend to join one or more marches or demonstrations near the United Center during the DNC. *Id.*

11.    Each of the Protesters typically brings certain items to protests—including some that are arguably covered by the Ordinance's vague list of prohibited items—and they intend to bring those items to DNC protests. Ex. R, Dkt. 26-1 ¶ 5; Ex. S, Dkt. 26-2 ¶ 5; Ex. T, Dkt. 26-3 ¶ 5. For example, some of the Protesters intend to bring pens and protest buttons of the type that are pinned to clothing (both arguably "pointed"). Ex. R ¶ 5(a), (e); Ex. S ¶ 5(l); Ex. T ¶ 5(a), (i). Ms. Keorkunian plans to bring an off-the-shelf first-aid kit, which typically includes a sealed packet of gauze (arguably a "sealed package") and a small pair of scissors

5

(arguably "pointed") to cut it with. Ex. S ¶ 5(a). They will also bring a glucose monitoring kit, which includes lancets (arguably "pointed"). *Id.* ¶ 5(e).

12.     Protesters may also bring additional articles depending on the circumstances of the day, such as their health, the weather, or activities planned for after the protest. Ex. R, ¶ 6; Ex. S, ¶6; Ex. T, ¶ 6. But *any* items that Protesters (or anyone else) intend to bring may at some point be deemed "potential safety hazards" by the Superintendent. For example, the Superintendent may decide that wooden sticks used for carrying signs, naloxone (the active ingredient in Narcan), or umbrellas of *any* kind are potentially hazardous. *Id.* ¶¶ 10-11; Ex. T, ¶¶ 9-10.

**Exigent Circumstances Require an Expedited Appeal and Decision.**

13.     Time is of the essence. The DNC is a unique opportunity for Protestors to bring their message directly to Democratic officials, leaders, and operatives, and the first such opportunity in Illinois since 1996. It begins just four weeks from today, and the Ordinance is in effect from August 17 through 25. Without swift action by this Court, (1) Protesters will risk arrest, fines, and incarceration under the vague Ordinance if an item in their possession is deemed "pointed," "a sealed package" or otherwise *potentially* hazardous, and (2) the challenge to the Ordinance will become moot because the Ordinance will no longer be in effect. *See Wirtz v. City of South Bend*, 669 F.3d. 860, 863 (7th Cir. 2012) ("Appellate courts can act quickly when there is a compelling reason for them to do so."). *See also* Circuit Rule 34(b)(1)(viii) ("good cause" to prioritize oral argument exists when "a right under the Constitution of the United States . . . would be maintained in a factual context

that indicates that a request for expedited consideration has merit"), *quoting* 28 U.S.C. § 1657.

14. Moreover, this Court's ruling must leave time for further proceedings below. If the Court determines that the Footprint Ordinance is unconstitutionally vague, the District Court will need to consider the remaining preliminary injunction factors and determine what relief is appropriate, including whether the City must amend the Ordinance or take other steps to ensure that its prohibitions are clear to the public and law enforcement. The City will need time to comply with such an injunction.

Accordingly, Protesters request the Court to set the following briefing schedule:

> Opening brief due July 24, 2024.
> Response brief due July 31, 2024.
> Reply brief due August 5, 2024.

Protesters further request that oral argument be scheduled promptly after the deadline for the reply brief.


Respectfully submitted,

Date: July 22, 2024              /s/ Rebecca K. Glenberg

                                 Rebecca K. Glenberg
                                 ROGER BALDWIN FOUNDATION OF ACLU, INC.
                                 150 N. Michigan Ave., Ste. 600
                                 Chicago, IL 60601
                                 (312) 201-9740
                                 rglenberg@aclu-il.org
                                 *Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 22, 2024, I filed the foregoing PLAINTIFFS-APPELLANTS' EMERGENCY MOTION FOR EXPEDITED APPEAL electronically with the Clerk of Court for the U.S. Court of Appeals for the Seventh Circuit using that Court's CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

/s/ Rebecca K. Glenberg
Rebecca K. Glenberg

*Attorney for Plaintiffs-Appellants*
